1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9   Daniel Wayne Cook,                )   No. CV-97-00146-PHX-RCB
                                       )
10              Petitioner,            )   DEATH PENALTY CASE
                                       )
11  v.                                 )
                                       )   **ORDER DENYING MOTION FOR**
12                                     )   **RELIEF FROM JUDGMENT**
    Charles L. Ryan, et al.,           )
13                                     )
                Respondents.           )
14                                     )
                                       )
15  _____        )

16          Before the Court is Petitioner's motion for relief from judgment pursuant to Rule

17  60(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 118.)  The motion is based on the

18  Supreme Court's recent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), which held

19  that ineffectiveness of post-conviction counsel may serve to excuse the procedural default

20  of claims alleging trial counsel ineffectiveness.  Petitioner argues that *Martinez* provides a

21  proper ground for this Court to reopen his federal habeas proceeding and to find cause for

22  the procedural default of a claim alleging a Sixth Amendment violation based on counsel's

23  failure to undertake a timely mitigation investigation.  Respondents oppose the motion.

24  (Doc. 119.)  As explained herein, the Court concludes that Petitioner has failed to establish

25  extraordinary circumstances to justify reopening this case.  Even if the Court reconsidered

26  its procedural bar determination, Petitioner has not demonstrated cause under *Martinez* to

27  excuse the default.

28

**BACKGROUND**

In 1988, a jury convicted Petitioner of two counts of first-degree murder for the brutal killing of two acquaintances in Lake Havasu City. Details of the crimes are set forth in the Arizona Supreme Court's opinion upholding Petitioner's convictions and sentences. *See State v. Cook*, 170 Ariz. 40, 45-46, 821 P.2d 731, 736-37 (1991) ("*Cook I*").

Prior to trial, Petitioner chose to waive his right to counsel. After strongly advising Petitioner against self-representation, the trial court accepted Petitioner's waiver as knowing, intelligent, and voluntary. Following conviction, Petitioner continued to represent himself and presented no mitigating evidence at the sentencing hearing, stating that the "[o]nly sentence I will accept from this Court at this time is the penalty of death, your Honor. I have nothing further." *Cook v. Schriro*, 538 F.3d 1000, 1011 (9th Cir. 2008) ("*Cook II*"). After reviewing the presentence report, pre-trial mental health evaluations, the State's sentencing memorandum, a letter from Cook, the trial evidence, and matters from hearings in the case, the trial court found several aggravating factors and no mitigating factors sufficient to outweigh the aggravation, and sentenced Petitioner to death.

On appeal, Petitioner argued that the trial court erred by allowing him to waive appointed counsel. In rejecting this claim, the Arizona Supreme Court observed that "[w]hile Cook certainly lacked a lawyer's skills, the record demonstrates that he was intellectually competent, understood the trial process, and was capable of making—and did make—rational decisions in managing his case." *Cook I*, 170 Ariz. at 48, 821 P.2d at 739.

Petitioner also sought post-conviction relief ("PCR") under Rule 32 of the Arizona Rules of Criminal Procedure. Among other claims in the PCR petition, Petitioner asserted that pre-trial counsel had been ineffective in failing to investigate and to prepare for trial and sentencing and that this deficient representation impermissibly forced Petitioner to choose self-representation. Following an evidentiary hearing, the trial court denied PCR relief. The court first found no prejudice from any alleged deficiencies by pre-trial counsel because the court could only speculate as to what could have happened had counsel represented Petitioner at trial. The court also found that Petitioner had failed to identify any specific

1  action that was ineffective and that no caselaw required a judge to inquire about the
2  effectiveness of appointed counsel in determining whether a waiver of counsel is knowing,
3  intelligent, and voluntary. Petitioner sought rehearing of the waiver issue but not the separate
4  claim alleging ineffectiveness by pre-trial counsel. Following denial of rehearing, the
5  Arizona Supreme Court summarily denied a petition for review.

6       In January 1997, Petitioner initiated federal habeas corpus proceedings. Among other
7  claims, Petitioner asserted in his habeas petition that his decision to waive counsel was not
8  knowing, voluntary, and informed because he was forced to choose between ineffective
9  counsel and self-representation. He also asserted as a stand-alone claim that pre-trial
10 counsel's representation was constitutionally deficient. In September 1999, this Court
11 determined that the ineffectiveness claim was procedurally defaulted because Petitioner had
12 failed to include it in his motion for rehearing from the denial of state PCR relief and had not
13 established cause to excuse the default. (Doc. 39 at 14-15.) In March 2006, the Court denied
14 relief on the remainder of Petitioner's claims. With regard to the waiver issue, the Court
15 determined that no clearly established federal law required the trial court to inquire into
16 Petitioner's potential dissatisfaction with counsel prior to allowing him to waive counsel.
17 (Doc. 90 at 12-15.)

18      On appeal, the Ninth Circuit affirmed. In a section titled "Ineffective assistance of
19 pre-trial counsel," the court concluded that the state court's factual determinations
20 concerning pre-trial counsel's representation were supported by the record and that its rulings
21 on Petitioner's ineffectiveness claims were not objectively unreasonable. *Cook II*, 538 F.3d
22 at 1016. The court also determined that the Supreme Court "has never held that a defendant
23 who does not inform the court that he wants to represent himself because he believes that his
24 counsel is ineffective was coerced into representing himself." *Id.* Regarding Petitioner's
25 allegation that pre-trial counsel was ineffective for failing to investigate mitigating evidence,
26 the court agreed with this Court that the claim was procedurally barred because under the
27 version of Arizona Rule of Criminal Procedure 32.9 applicable to Petitioner's case the failure
28 to detail each ground of relief in a motion for rehearing waived further review of that issue.

1    *Id.* at 1026-27.  Furthermore, the court found that counsel ineffectiveness did not constitute

2    cause for the procedural default because Petitioner had no right to counsel in state court at

3    the motion for rehearing stage.  *Id.* at 1027, *citing State v. Smith*, 184 Ariz. 456, 459, 910

4    P.2d 1, 4 (1996) ("After counsel or the pro per defendant submits the post-conviction petition

5    to the court and the trial court makes its required review and disposition, counsel's

6    obligations are at an end.").

7        In January 2009, the Supreme Court denied a petition for certiorari, effectively ending

8    these federal habeas corpus proceedings, and the Arizona Attorney General sought a warrant

9    of execution.  At the time, litigation concerning the constitutionality of Arizona's lethal-

10   injection protocol was pending in both state and federal courts, and the Arizona Supreme

11   Court declined to issue a warrant.  Instead, the court directed Petitioner to initiate a new state

12   PCR proceeding to litigate the constitutionality of Arizona's lethal-injection protocol, and

13   Petitioner promptly filed a second PCR petition.  The petition challenged the execution

14   protocol but also asserted among other claims that pre-trial counsel had been ineffective for

15   failing to conduct a mitigation investigation.  The trial court denied relief in December 2009,

16   finding in part that Petitioner's ineffectiveness claims had been previously litigated and

17   therefore were precluded.  The Arizona Supreme Court denied a petition for review in

18   September 2010, and the State again sought a warrant of execution.

19       In November 2010, while the warrant request was pending, Petitioner filed a third

20   PCR petition seeking relief on the grounds of newly-discovered material facts that probably

21   would have changed his sentence and the existence of facts establishing that the trial court

22   would not have imposed the death penalty.  *See* Ariz. R. Crim. 32.1(e) and (h) (providing

23   exceptions to preclusion for successive petitions raising claims based on newly-discovered

24   evidence and actual innocence).  Specifically, Petitioner asserted that he only recently was

25   diagnosed as suffering from post-traumatic stress disorder ("PTSD") and organic brain

26   dysfunction and that this mitigation probably would have resulted in a non-death sentence.

27   On January 27, 2011, the trial court denied relief, stating "unequivocally that if it had known

28   in 1988 that the Defendant had been diagnosed with post-traumatic stress disorder at the time

- 4 -

1    of the murders it still would have imposed the death penalty." The court further noted that
2    the subsequent PTSD diagnosis "simply gave a name to significant mental health issues that
3    were already known to the Court at the time of sentencing. Knowing that name and knowing
4    the symptomology of that condition would not have changed the sentencing decision made
5    by the Court." Finally, the court observed that Petitioner had failed to diligently develop his
6    PTSD evidence.

7        On February 8, 2011, the Arizona Supreme Court issued a warrant of execution for
8    April 5, 2011. On March 8, 2011, Petitioner sought review in the state supreme court of the
9    trial court's denial of the third PCR petition. He argued *inter alia* that his alleged lack of
10   diligence in developing the PTSD diagnosis was due to the ineffective assistance of counsel
11   during his first PCR proceeding and asserted that he had the right to effective post-conviction
12   counsel under the Sixth Amendment. The Arizona Supreme Court summarily denied review
13   on March 22, 2011.

14       Petitioner then filed a petition for certiorari and asked the Supreme Court to stay his
15   execution pending resolution of certiorari in *Martinez v. Ryan*, a case that presented the
16   question of whether the Sixth Amendment requires the effective assistance of post-conviction
17   counsel when a post-conviction proceeding is the first opportunity to raise trial
18   ineffectiveness claims. On April 4, 2011, the Supreme Court granted the motion for stay
19   pending disposition of Petitioner's certiorari petition. *See Cook v. Arizona*, 131 S. Ct. 1847
20   (2011).

21       On March 20, 2012, the Court in *Martinez v. Ryan* declined to reach the constitutional
22   question on which certiorari had been granted. 132 S. Ct. at 1315. Instead, the Court
23   adopted an equitable rule, finding that in order to "protect prisoners with a potentially
24   legitimate claim of ineffective assistance of trial counsel, it is necessary to modify the
25   unqualified statement in *Coleman* [*v. Thompson*, 501 U.S. 722 (1991),] that an attorney's
26   ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse
27   a procedural default." *Id.* The Court held that in states like Arizona, which require
28   ineffective assistance of trial counsel claims to be raised in an initial-review collateral

proceeding, failure of counsel in an initial-review collateral proceeding to raise a substantial trial ineffectiveness claim may provide cause to excuse the procedural default of such a claim. *Id.*

Less than a week after issuing the *Martinez* opinion, the Court denied Petitioner's certiorari petition, *Cook v. Arizona*, 132 S. Ct. 1790 (2012), and the State sought issuance of a new warrant of execution. Petitioner then requested leave to file an untimely petition for rehearing from the denial of certiorari in these federal habeas proceedings. The motion urged rehearing in light of *Martinez* and requested that Petitioner's federal habeas case be remanded back to the Ninth Circuit for a determination of whether ineffectiveness by post-conviction counsel constitutes cause for the procedural default of his trial ineffectiveness claims. The Court denied the request on May 29, 2012. *Cook v. Schriro*, No. 08-7229, 2012 WL 1912258 (U.S. May 29, 2012).

On June 5, 2012, Petitioner filed the instant motion, arguing that extraordinary circumstances based on *Martinez* justify reopening this Court's prior judgment and that post-conviction counsel's ineffectiveness constitutes cause to excuse the default of his claim alleging pre-trial counsel ineffectiveness. On the same day, Petitioner filed a second petition for writ of habeas corpus raising anew a claim of ineffective assistance of pre-trial counsel.[1]

On June 12, 2012, the Arizona Supreme Court issued a warrant of execution for August 8, 2012. Subsequently, Petitioner filed a motion for stay of execution pending disposition of his Rule 60(b) motion and/or new habeas petition.

## DISCUSSION

Federal Rule of Civil Procedure 60(b) entitles the moving party to relief from judgment on several grounds, including the catch-all category "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). A motion under subsection (b)(6) must be brought "within a reasonable time," Fed. R. Civ. P. 60(c)(1), and

---

[1]    The Court addresses Petitioner's newly-filed petition in a separate order, concluding that it constitutes a prohibited second or successive petition under the dictates of 28 U.S.C. § 2244(b) and therefore must be dismissed.

requires a showing of "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

## I.    Second or Successive Petition

For habeas petitioners, Rule 60(b) may not be used to avoid the prohibition set forth in 28 U.S.C. § 2244(b) against second or successive petitions.  In *Gonzalez*, the Court explained that a Rule 60(b) motion constitutes a second or successive habeas petition when it advances a new ground for relief or "attacks the federal court's previous resolution of a claim *on the merits.*"  *Id.* at 532.  "On the merits" refers "to a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d)."  *Id.* at n.4.  The Court further explained that a Rule 60(b) motion does *not* constitute a second or successive petition when the petitioner "merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar."  *Id.*

Respondents argue that the instant motion constitutes a prohibited second or successive habeas petition because Petitioner's claims of trial ineffectiveness were rejected on the merits "in the context of" Petitioner's claim that counsel ineffectiveness led to Petitioner's decision to represent himself.  (Doc. 119 at 6.)  In response, Petitioner asserts that Respondents misapprehend his argument and that the already-resolved claim of ineffectiveness-induced waiver of trial counsel is separate from the claim that counsel was ineffective for failing to investigate and develop a mitigation plan.  (Doc. 120 at 2.)

In its order analyzing Petitioner's waiver-of-counsel claim, this Court did not address the merits of Petitioner's allegations of ineffectiveness by trial counsel, having previously found them to be procedurally barred.  However, on appeal, prior to addressing the waiver issue, the Ninth Circuit found that "the trial court's rulings on Cook's ineffective assistance of counsel claims were not contrary to or unreasonable applications of *Strickland*."  *Cook II*, 538 F.3d at 1016.  Although it appears the appellate court may have reached the merits of Petitioner's ineffectiveness claims, a closer reading of the opinion persuades this Court that Petitioner's Rule 60(b) motion does not constitute an unauthorized successive petition.

1    First, the Ninth Circuit addressed ineffectiveness only with respect to several trial-
2  related issues, finding no merit to Petitioner's claimed prejudice from the lost opportunity
3  to have a stronger presentation on reasonable doubt, to impeach the co-defendant, and to
4  challenge the co-defendant's plea agreement.   *Id.*   Further, in the context of analyzing
5  Petitioner's waiver claim, the appellate court did not discuss counsel's alleged failure to
6  investigate mitigating evidence.  Rather, the court expressly affirmed this Court's finding of
7  procedural default as to the mitigation-related ineffectiveness claim. *Id.* at 1024-26.  Because
8  neither the Ninth Circuit nor this Court expressly addressed the merits of Petitioner's
9  sentencing ineffectiveness claim, and both courts clearly found the claim procedurally barred,
10  this Court has jurisdiction under *Gonzalez* to consider Petitioner's Rule 60(b) motion, free
11  of the constraints imposed by 28 U.S.C. § 2244(b) upon successive petitions.[2]  *See Ruiz v.*
12  *Quarterman*, 504 F.3d 523, 526 (5th Cir. 2007) (finding § 2244(b) inapplicable where Rule
13  60(b) motion sought to reopen judgment on procedurally barred claim).

14  ## II.    Extraordinary Circumstances

15    The Court turns now to the issue raised in the instant motion—whether in this case
16  *Martinez* constitutes extraordinary circumstances justifying relief under Rule 60(b)(6) to
17  reconsider the Court's procedural bar ruling.  When a petitioner seeks post-judgment relief
18  based on an intervening change in the law, the Ninth Circuit has directed district courts to
19  balance numerous factors on a case-by-case basis.  *Phelps v. Alameida*, 569 F.3d 1120, 1133
20  (9th Cir. 2009); *see also Lopez v. Ryan*, 678 F.3d 1131, 1135-37 (9th Cir. 2012).  These
21  include but are not limited to: (1) whether "the intervening change in the law . . . overruled
22  an otherwise settled legal precedent;" (2) whether the petitioner was diligent in pursuing the

23

24    [2]    Although not raised by Respondents in their opposition, the Court observes that
25  Petitioner's motion possibly could be construed as an impermissible second or successive
   petition because the sentencing ineffectiveness claim Petitioner ultimately seeks to litigate
26  if the Court were to find cause under *Martinez* is fundamentally different from the defaulted
   sentencing ineffectiveness claim raised in the amended federal habeas petition.  Because
27  Respondents have not made this assertion and the motion fails on other grounds, the Court
28  does not address the issue here.

issue; (3) whether "the final judgment being challenged has caused one or more of the parties to change his position in reliance on that judgment;" (4) whether there is "delay between the finality of the judgment and the motion for Rule 60(b)(6) relief;" (5) whether there is a "close connection" between the original and intervening decisions at issue in the Rule 60(b) motion; and (6) whether relief from judgment would upset the "delicate principles of comity governing the interaction between coordinate sovereign judicial systems." *Phelps*, 569 F.3d at 1135-40.  After consideration of these factors, the Court determines that the balance weighs against granting post-judgment relief.

Change in the Law

The first factor considers the nature of the intervening change in the law.  In *Lopez*, another capital case from Arizona in which the petitioner sought relief under Rule 60(b) based on *Martinez*, the court found that the Supreme Court's creation of a narrow exception to otherwise settled law in *Coleman* "weigh[ed] slightly in favor of reopening" the petitioner's habeas case. 678 F.3d at 1136.  "Unlike the 'hardly extraordinary' development of the Supreme Court resolving an existing circuit split, *Gonzalez*, 545 U.S. at 536, the Supreme Court's development in *Martinez* constitutes a remarkable—if 'limited,' *Martinez*, 132 S. Ct. at 1319—development in the Court's equitable jurisprudence." *Id.*  Thus, based on *Lopez*, this factor weighs slightly in Petitioner's favor.  *But see Adams v. Thaler*, 679 F.3d 312, 320 (5th Cir. 2012) (finding that *Martinez* is "simply a change in decisional law" and does not constitute an extraordinary circumstance justifying postconviction relief).

Diligence

The second factor, whether Petitioner was diligent in pursuing the issue, also weighs in Petitioner's favor.  This is not a case, such as *Lopez*, where the petitioner not only failed to advance post-conviction counsel's ineffectiveness as cause for the default of his sentencing ineffectiveness claim, but argued that such counsel had in fact been diligent in developing the claim.  678 F.3d at 1137.  Here, Petitioner argued to the Ninth Circuit that ineffective assistance of post-conviction counsel constituted cause because the post-conviction proceeding was the first opportunity he had to raise trial ineffectiveness claims

1    and thus he was not subject to the preclusive rule of *Coleman*.  Appellant's Supplemental

2    Reply Brief, *Cook v. Schriro*, No. 06-99005, 2007 WL 4733563, at *18 (9th Cir. Nov. 27,

3    2007).  In rejecting the claim, the Ninth Circuit observed that the default occurred during

4    post-conviction proceedings and that ineffective assistance of post-conviction counsel could

5    not serve as cause because Petitioner had no constitutional right to such counsel.  *Cook II*,

6    538 F.3d at 1027.  Petitioner clearly acted with diligence.

7         Reliance

8         The third factor is whether granting relief under Rule 60(b) would "'undo the past,

9    executed effects of the judgment,' thereby disturbing the parties' reliance interest in the

10   finality of the case." *Phelps*, 569 F.3d at 1137 (quoting *Ritter v. Smith*, 811 F.2d 1398, 1402

11   (11th Cir. 1987)).  Post-judgment relief "is less warranted when the final judgment being

12   challenged has caused one or more of the parties to change his legal position in reliance on

13   that judgment." *Id.* at 1138.

14        In *Lopez*, the court found that the State's and the victim's interest in finality,

15   especially after a warrant of execution has been obtained and an execution date set, weigh

16   against granting post-judgment relief.  678 F.3d at 1136; *see also Calderon v. Thompson*, 523

17   U.S. 538, 556 (1998) (discussing finality in a capital case).  Accordingly, this factor weighs

18   against reopening Petitioner's habeas case.

19        Delay

20        The fourth factor looks at whether a petitioner seeking to have a new legal rule

21   applied to an otherwise final case has petitioned the court for reconsideration "with a degree

22   of promptness that respects the strong public interest in timeliness and finality." *Phelps*, 569

23   F.3d at 1138 (internal quotation omitted).  Here, the motion was filed only days after the

24   Supreme Court denied Petitioner's motion to file an untimely request for rehearing of the

25   order denying certiorari of the Ninth Circuit's decision affirming the denial of habeas relief.

26   And that motion was itself filed just two weeks following the Supreme Court's denial of

27   Petitioner's certiorari petition from the Arizona Supreme Court's denial of his successive

28   state post-conviction petition, in which Petitioner asserted a Sixth Amendment right to

1  effective post-conviction counsel.  Petitioner did not delay seeking relief based on *Martinez*,

2  and this factor weighs in his favor.

3      <u>Close Connection</u>

4      The fifth factor "is designed to recognize that the law is regularly evolving." *Phelps*,

5  569 F.3d at 1139.  The mere fact that tradition, legal rules, and principles inevitably shift and

6  evolve over time "cannot upset all final judgments that have predated any specific change

7  in the law." *Id.*  Accordingly, the nature of the change is important and courts should

8  examine whether there is a "close connection" between the original and intervening decision

9  at issue in a Rule 60(b)(6) motion.  *Id.*

10      In *Phelps*, the intervening change in the law directly overruled the decision for which

11  reconsideration was sought, and this factor supported reconsideration.  The same cannot be

12  said here because Petitioner's procedural default occurred during appeal of his post-

13  conviction petition, not its initial filing.

14      In *Martinez*, the petitioner's post-conviction counsel failed to raise any trial

15  ineffectiveness claims in the initial state post-conviction petition.  When Martinez later

16  sought to raise trial ineffectiveness claims in a successive state post-conviction petition, the

17  claims were found precluded under state law and then found procedurally defaulted in federal

18  habeas proceedings.  In carving out a narrow exception to the rule that ineffectiveness of

19  post-conviction counsel cannot constitute cause for a procedural default, the Court in

20  *Martinez* emphasized that the

> 21  rule of *Coleman* governs in all but the limited circumstances recognized here.
> 22  The holding in this case does not concern attorney errors in other kinds of
> proceedings, *including appeals from initial-review collateral proceedings*,
> 23  second or successive collateral proceedings, and petitions for discretionary
> review in a State's appellate courts.  It does not extend to attorney errors in any
> 24  proceeding *beyond the first occasion the State allows a prisoner to raise a*
> *claim of ineffective assistance at trial*, even though that initial-review
> 25  collateral proceeding may be deficient for other reasons.

26  *Martinez*, 132 S. Ct. at 1320 (citations omitted; emphasis added).

27      In this case, Petitioner's post-conviction counsel raised his pre-trial ineffectiveness

28  claims in the initial post-conviction petition (the "first occasion" to raise such claims), and

- 11 -

they were denied on the merits by the state court following an evidentiary hearing. However, post-conviction counsel failed to include the ineffectiveness claims in a motion for rehearing from the denial of post-conviction relief or in a discretionary petition for review to the Arizona Supreme Court, both of which were necessary steps at that time to properly exhaust the claims in state court and, consequently, for federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (requiring state prisoners to complete one round of state's established appellate review process to exhaust claims for federal review); *Cook II*, 538 F.3d at 1026 ("Prior to the amendments to Rule 32.9, the failure of the petitioner to file a motion for rehearing setting forth in detail the grounds for rehearing waived further review.").

Under the plain language of *Martinez*, post-conviction counsel's failure to appeal the state court's denial of the ineffectiveness claims cannot constitute cause for the procedural default because the *Martinez* exception does not extend to attorney errors "beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." 132 S. Ct. at 1320; *see also Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) ("Arnold's multiple ineffective assistance claims were litigated in his initial-review collateral proceeding, but not preserved on appeal. Thus, unlike Martinez, Arnold has already had his day in court; deprivation of a second day does not constitute cause."). Indeed, as recognized by the Ninth Circuit in this case, under Arizona law a defendant is entitled to counsel only through the disposition of a first post-conviction petition. *Cook II*, 538 F.3d at 1027; *see also Smith*, 184 Ariz. at 459, 910 P.2d at 4 ("Our constitution does not require, and the rules do not extend, the right to appointed counsel for indigent defendants in Rule 32 proceedings beyond the trial court's mandatory consideration and disposition of the PCR.") "Because Cook had no constitutional right to counsel *at the motion for rehearing stage*, any errors by his counsel could not constitute cause to excuse the default." *Cook II*, 538 F.3d at 1027 (emphasis added) (citing *Coleman* and *Harris v. Vasquez*, 949 F.2d 1497 (9th Cir. 1990)). The lack of connection between Petitioner's case and *Martinez* weighs heavily against reconsideration.

<u>Comity</u>

The last factor concerns the need for comity between independently sovereign state and federal judiciaries.  *Phelps*, 569 F.3d at 1139.  The Ninth Circuit has determined that principles of comity are not upset when an erroneous legal judgment, if left uncorrected, "would prevent the true merits of a petitioner's constitutional claims from ever being heard." *Id.* at 1140.  For example, in *Phelps*, the district court dismissed the petition as untimely, thus precluding any federal habeas review of the petitioner's claims.  The court found that this favored the grant of post-judgment relief because dismissal of a first habeas petition "denies the petitioner the protections of the Great Writ entirely."  *Id.*

Here, the Court's judgment did not preclude review of all of Petitioner's federal constitutional claims.  A number of the claims, including the trial court's failure to inquire about the ineffectiveness of counsel before permitting Petitioner's waiver of counsel, were addressed on the merits in both the district and appellate courts.  More critically, the state court held an evidentiary hearing and considered the merits of Petitioner's pre-trial ineffectiveness claims.  Additionally, the state court recently considered the merits of Petitioner's expanded sentencing ineffectiveness claim during the third PCR proceeding.  In light of these circumstances, the comity factor does not favor Petitioner.

<u>Conclusion</u>

The Court has evaluated each of the factors set forth in *Phelps* in light of the particular facts of this case.  Some weigh in Petitioner's favor.  However, the Court finds that the lack of connection between Petitioner's case and the *Martinez* decision is a substantial factor that, when weighed with the reliance and comity factors, tips the balance against granting post-judgment relief.  Accordingly, the Court concludes that Petitioner's motion to reopen judgment fails to demonstrate the extraordinary circumstances necessary to grant relief under Rule 60(b)(6).

**III.   Cause for Procedural Default**

Even if the Court granted the motion under Rule 60(b) to reconsider whether Petitioner can establish cause for his procedural default, Petitioner would not be entitled to

the relief he seeks for two reasons.  First and foremost, as already discussed, the Supreme Court's holding in *Martinez* does not apply to alleged ineffectiveness by post-conviction *appellate* counsel, and the procedural default at issue here occurred when Petitioner's post-conviction counsel failed to preserve the pre-trial ineffectiveness claims for appeal.  Second, Petitioner has not demonstrated that the defaulted ineffectiveness claim is substantial.  Therefore, even if the narrow *Martinez* exception applied, it does not provide cause to excuse the procedural default here.

In *Martinez*, the Court held that a prisoner must demonstrate that the underlying ineffectiveness claim is a substantial one to overcome any procedural default of that claim.  132 S. Ct. at 1318.  "Thus, *Martinez* requires that a petitioner's claim of cause for a procedural default be rooted in 'a potentially legitimate claim of ineffective assistance of trial counsel.'"  *Lopez*, 678 F.3d at 1137-38 (citing *Martinez*, 132 S. Ct. at 1318); *see also Leavitt v. Arave*, No. 12-35427, 2012 WL 2086358, at *1 (9th Cir. June 8, 2012).  Under *Strickland v. Washington*, 466 U.S. 668, 687 (1994), an ineffective assistance claim requires a showing that counsel's performance was both "deficient" and "prejudicial" to the petitioner's case.

Petitioner argues that pre-trial counsel was ineffective for failing to conduct a prompt investigation into mitigation early in the case.  (Doc. 118 at 24-25.)  Although neither his initial state post-conviction petition nor amended federal habeas petition detail what counsel should have done or what potentially mitigating evidence would have been uncovered, Petitioner asserts in his Rule 60(b) motion that a thorough investigation of Petitioner's childhood would have revealed a history of physical and sexual abuse by family members, as well as repeated sexual abuse by a house parent and a gang rape by peers when Petitioner was 15 and living at a group home for boys.  He further asserts that a proper investigation would have revealed that he has a history of alcohol and drug abuse resulting from his traumatic upbringing, attempted suicide on numerous occasions, and suffers from post-traumatic stress disorder and impaired cognitive functioning.

Prior to trial and his waiver of counsel, Petitioner was evaluated by two mental health experts to determine competency at the time of the offense and competency to stand trial.

1   Dr. Daniel Wynkoop, a psychologist, detailed Petitioner's background and history, including

2   his unstable early homelife, juvenile delinquency, early onset of drug and alcohol use, sexual

3   abuse by a house parent at a boys' home, sexual molestation at a bus station, repeated

4   hospitalizations for depression and suicidal tendencies, and difficulty maintaining

5   employment and relationships.  Psychological testing revealed adequate intellectual resources

6   but some deficits in understanding cause and effect relationships, lack of social judgment,

7   and some failure to understand the implications of behavior.  Dr. Wynkoop diagnosed

8   Petitioner as having a borderline personality disorder, with alcohol, amphetamine, and

9   marijuana addictions.  He observed nothing to suggest organic brain damage or a thought

10  disorder.  In Dr. Wynkoop's view, Petitioner's alcohol and drug use at the time of the crime

11  likely impaired his ability to exercise judgment.

12          Dr. Eugene Almer, a psychiatrist, also described some of Petitioner's social history.

13  He observed that Petitioner's mother was an alcoholic with a manic depressive illness, who

14  was frequently hospitalized, and that Petitioner lived in various foster and group homes.

15  Petitioner relayed that he began drinking at 14, smoking marijuana at 15, taking barbiturates

16  and hallucinogenics at 16 and 17 respectively, and using amphetamines at 25.  Dr. Almer

17  reviewed "a great number of medical records" from hospitals in Wyoming and Arizona,

18  including voluminous records from the Kingman Regional Hospital that are "replete with

19  psychological reports, psychiatric evaluations and numerous treatment records" describing

20  "various types of alcohol and drug abuse and personality disorder problems in addition to the

21  diagnosis of depression or dysthymic disorder."  Dr. Almer also reviewed a September 1987

22  investigative report that included a taped interview of Petitioner's mother and stepfather, who

23  described Petitioner's life history, psychiatric problems, acting-out behavior, and various

24  stays at institutions as a teenager.  In addition, Dr. Almer noted that a CT scan from 1982 was

25  normal.  With regard to Petitioner's mental state at the time of the offense, Dr. Almer

26  concluded that Petitioner probably was under the heavy influence of alcohol and drugs,

27  which seriously impaired his judgment and produced more impulsive behavior.

28          From these evaluations, it is evident that pre-trial counsel obtained a substantial

1   number of records and background information concerning Petitioner.  He also enlisted an

2   investigator to interview, at minimum, Petitioner's mother and stepfather.  Whether counsel

3   would have pursued additional mitigating evidence had he remained on the case cannot be

4   known.   Consequently, the Court concludes that Petitioner cannot establish deficient

5   performance.  However, even assuming pre-trial counsel acted deficiently, Petitioner "fails

6   to meet the *Martinez* test of substantiality as to prejudice."  *Lopez*, 678 F.3d at 1138; *see also*

7   *Leavitt*, 2012 WL 2086358, at *1 (finding no substantial ineffectiveness claims where record

8   demonstrated no prejudice from alleged ineffectiveness).

9        Petitioner's first prejudice argument relies on a declaration from the prosecutor stating

10   that he would not have sought the death penalty if he had known of Petitioner's abusive

11   childhood and mental problems.  However, in addressing this "newly discovered" evidence

12   during the third PCR proceeding, the state court expressly rejected the argument as the

13   "ultimate in speculation . . . based on the assertion of a prosecutor 23 years after the fact that

14   he would have made a different charging decision."  *State v. Cook*, No. CR-9358, at 3

15   (Maricopa Co. Sup. Ct. Jan. 11, 2011).  The court further explained:

16          To the extent that Mr. Larsen's opinion is relevant, the question is not what the
             Eric Larsen of today, having practiced criminal defense for at least the last 15
17          years, would do in a case involving identical facts if he were somehow to be
             appointed as a special prosecutor in a potential capital case.  The question is
18          what the prosecutor Eric Larsen would have done back in 1987 and 1988
             without the benefit of the experience of criminal defense work, including
19          defense of capital cases, to broaden his horizons and perspectives.

20             The Court would like to avoid getting into a discussion of personalities
          in this Order and recognizes that a determination of credibility based solely
21          upon affidavits is improper, unless perhaps an affidavit is inherently incredible
          on its face.  The Court recalls, however, that Mr. Larsen was an aggressive
22          prosecutor and that there were times when he and the Court clashed as to how
          the Court handled this case.   The Court also recalls an unrelated case
23          prosecuted around this same time by Mr. Larsen in which a defendant claimed
          that his sentence should be mitigated by a diagnosis of post-traumatic stress
24          disorder.  The Court recalls that Mr. Larsen, who had served in the military,
          indicated that many military personnel, presumably including himself, did not
25          necessarily believe in the viability of post-traumatic stress disorder as a
          psychiatric diagnosis and that it should not be treated as a relevant
26          consideration in sentencing.

27             The Court acknowledges that it is skating on thin procedural ice by
          making these comments because it may seem to be deciding issues of
28          credibility based on affidavits rather than sworn testimony subject to cross-

examination.  The Court is engaging in this analysis mainly to point out the problems inherent in trying to determine how a prosecutor would have exercised his discretion 23 years ago with the added knowledge of a diagnosis of post-traumatic stress disorder but without the added experience and perspective he undoubtedly gained in the ensuing years.

The Court is also aware that in 1987 and 1988, long before the *Ring* decision changed the landscape of capital sentencing, the Mohave County Attorney's Office sought the death penalty on a fairly regular basis.  This was a case involving the torture, mutilation and eventually killing of 2 completely innocent victims who had the misfortune of working with and knowing the Defendant and the co-defendant in this case.  It is unfathomable to the Court that the Mohave County Attorney's Office during the time that this case was pending would not have sought the death penalty even for a defendant who was known to have been diagnosed with post-traumatic stress disorder.

The Court finds that the affidavit from the former prosecutor of this case is speculation and conjecture.

*Id.* at 4-5.

This Court concurs in the conclusion of the state court that Petitioner cannot establish prejudice from pre-trial counsel's alleged failure to conduct a timely mitigation investigation by claiming more than 20 years after trial that the prosecutor would not have sought the death penalty.  The prosecutor was aware prior to trial of Petitioner's mental difficulties, alcohol and substance abuse problems, and history of attempted suicides.  He was also well versed in the facts of these gruesome murders.  As noted by the state court, it is pure speculation to say what probably would have occurred had the prosecutor been provided additional information about Petitioner's difficult childhood and newly-diagnosed post-traumatic stress disorder.

Petitioner also argues that development of a mitigation case would have ensured that such information was available to and considered by the sentencing judge.  Even though Petitioner chose not to argue for leniency or present mitigation during the sentencing hearing, in his view there is a reasonable probability the mental health experts who evaluated him before trial would have determined that he suffered from post-traumatic stress disorder if they had known more about his background and, consequently, the trial court would not have sentenced him to death.  This argument is also unpersuasive because, like the prosecutor's decision to seek the death penalty, it rests on speculation about the experts and assumes any

1   additional evidence developed by pre-trial counsel would have been available to the

2   sentencing judge despite Petitioner's decision not to make a mitigation presentation. *See,*

3   *e.g.*, *Schriro v. Landrigan*, 550 U.S. 465, 476 (2007) (finding no prejudice under *Strickland*

4   where the defendant would have refused to allow counsel to present mitigation regardless of

5   what information counsel might have uncovered during a more thorough investigation).

6          Moreover, the trial judge who actually sentenced Petitioner has considered the newly-

7   developed mitigation evidence and concluded there is no reasonable probability the

8   sentencing outcome would have been different:

9              This is not a case where the Court has to speculate about whether new
       evidence might have caused a jury to reach a not guilty verdict had they known
10     of such evidence. This is not a case where the Court has to speculate about
       whether new evidence might have caused a jury to not recommend a death
11     sentence had they known of such evidence. Only the Court knows for sure
       what it would have done, and the only speculation involved is in the process
12     of remembering the judicial officer that it was 22 years ago.

13             The Court certainly recognizes the problems inherent in this analysis.
       Counsel may have a legitimate concern that the Court can say whatever it
14     wants in an order, without testifying under oath, being cross-examined or
       subjected to impeachment. The fact remains that this Court has had to make
15     similar decisions in countless Rule 32 proceedings in which claims were made
       that different circumstances, usually involving more effective representation,
16     would have resulted in different sentences being imposed. The fact that this
       is a death penalty case does not change the process, it just heightens the
17     significance of the process. The Court determines unequivocally that if it had
       known in 1988 that the Defendant had been diagnosed with post-traumatic
18     stress disorder at the time of the murders it still would have imposed the death
       penalty.

19
               . . . .
20
               The Court concludes for all the above reasons that the subsequent
21     diagnosis of post-traumatic stress disorder simply gave a name to significant
       mental health issues that were already known to the Court at the time of
22     sentencing. Knowing that name and knowing the symptomology of that
       condition would not have changed the sentencing decision by the Court. The
23     recent diagnosis is not material under Rule 32.1(e) because it would not have
       probably resulted in a different sentence being imposed by this Court.
24

25   *State v. Cook*, No. CR-9358, at 6-7 (Maricopa Co. Sup. Ct. Jan. 11, 2011).

26          Petitioner cites caselaw demonstrating that an ineffectiveness claim may be

27   established even where a defendant takes over his own representation. However, the claimed

28   deficiency still must satisfy both the performance and prejudice prongs of *Strickland*. As just

1  discussed, Petitioner cannot make that showing here.  Accordingly, even if the *Martinez*

2  exception applied, Petitioner has not demonstrated that post-conviction counsel was

3  ineffective for failing to raise a substantial sentencing ineffectiveness claim.

4  **CERTIFICATE OF APPEALABILITY**

5  To the extent a certificate of appealability is needed for an appeal from this Order, *see*

6  *United States v. Washington*, 653 F.3d 1057, 1065 n.8 (9th Cir. 2011) (noting open question

7  whether COA required to appeal denial of legitimate Rule 60(b) motion), *cert. denied*, 132

8  S. Ct. 1609 (2012), the Court finds that reasonable jurists could debate its denial of

9  Petitioner's Rule 60(b)(6) motion.  *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S.

10  473, 484 (2000).  Accordingly, the Court grants a certificate of appealability on this issue.

11  Based on the foregoing,

12  **IT IS ORDERED** that Petitioner's Motion for Relief from Judgment Pursuant to Rule

13  60(b)(6) (Doc. 118) is **DENIED**.

14  **IT IS FURTHER ORDERED** that Petitioner's Motion for Stay of Execution (Doc.

15  121) is **DENIED**.

16  DATED this 6th day of July, 2012.

17

18

19  _____

20  Robert C. Broomfield
   Senior United States District Judge

21

22

23

24

25

26

27

28